IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2012

**STATE OF TENNESSEE v. CARLOS CANNON**

**Direct Appeal from the Circuit Court for Madison County**
**No. 10-129     Roy B. Morgan, Jr., Judge**

**No. W2011-01646-CCA-R3-CD - Filed May 4, 2012**

The defendant, Carlos Cannon, was convicted by a Madison County Circuit Court jury of aggravated robbery, a Class B felony, and was sentenced to ten years in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

George Morton Googe, District Public Defender; and Susan D. Korsnes, Assistant Public Defender, Tennessee, for the appellant, Carlos Cannon.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On November 30, 2009, Kathryn Sails, the victim, was robbed after cashing her paycheck at a BP service station in Jackson, Tennessee. After an investigation, the defendant was indicted on one count of aggravated robbery.

**State's Proof**

The victim testified that, on November 30, 2009, she cashed her paycheck at a BP

service station, walked to another store to purchase items, then returned to the BP station to make another purchase. As she was walking home, she was accosted by a man who "came out of nowhere," pulled a gun on her and demanded money, which she turned over to him. She was "[r]eal scar[ed]" when he pointed a gun at her. The victim identified the defendant in court as the man who robbed her.

The victim testified that, sometime later, Investigator Tyreece Miller showed her a photographic array, from which she identified the defendant as the robber. While viewing the security footage from the BP station, the victim identified herself cashing her check at the counter and pointed out the defendant walking into the store. She said that she purchased a Verizon phone card and left. The video showed the victim returning to the BP station and putting her bags down, during which time she picked up a few more items. The video then showed the defendant walking out of the store. The victim purchased her items and walked out of the store.

Investigator Chris Chestnut with the Jackson Police Department testified that he took a statement from the victim and then went to the BP station to obtain the surveillance video from the approximate time of the robbery. The video showed the victim at the counter cashing a check and the defendant apparently "being drawn to what [the victim]'s doing at the counter." The video then showed the defendant exiting the store and returning to a vehicle. After fast-forwarding approximately ten minutes, the video showed the victim entering the store for a second time, carrying a bag of purchases. The vehicle the defendant was driving could be seen through the door. At one point, the vehicle pulled off, turned around, and pulled back up parallel to a white van and then backed up a little bit. Investigator Chestnut noted that the doors of the defendant's vehicle were in line with the front door of the store. The video then showed the victim leaving the store with the items she purchased. Investigator Chestnut said that the victim was robbed less than 100 yards from the BP station.

Lieutenant Tyreece Miller with the Jackson Police Department testified that he created the photographic array that was shown to the victim. The victim immediately identified the photograph of the defendant as the man who robbed her.

**Defendant's Proof**

The defendant testified that he was at the BP station on November 30, 2009, meeting a friend. His friend was the person seen in the surveillance video in a truck and with whom he was speaking when he walked into the store. The defendant went outside to wait on his friend and then went to his friend's house, less than a mile away. After "t[aking] care of something" at his friend's house, the defendant returned to the BP station to get some gas.

-2-

He explained that he turned his car around because the store manager had warned him before about hanging around the parking lot and he wanted to make sure the manager was not coming outside or calling the police on him. The defendant decided that his friend was taking too long, so he left and went to his mother's house to pack his clothes so he could go to Milwaukee, Wisconsin. His mother's house was two streets away from the BP station. The defendant did not remember seeing the victim and denied robbing her.

On cross-examination, the defendant testified that the friend he met at the BP that day was named Jarvis and that he went to Jarvis' house to buy marijuana. He said that he went back to the BP after leaving Jarvis' house in order to get some gas and meet another friend to buy another kind of marijuana. The defendant explained that the second friend was taking too long to arrive at the gas station, so he decided to leave because he did not want the store clerk or police to be suspicious of his presence.

The defendant denied seeing the victim cashing her check the first time he walked into the store, even though the surveillance video showed him looking at the counter while he was talking to his friend. He admitted that he did not buy gas the first time he went to the store but then came back shortly thereafter in need of gas. The defendant said it was just a coincidence that he and the victim were at the gas station at the same time and left at the same time.

Jamarius Anderson testified that he was driving to work on November 30, 2009, when he witnessed a woman getting robbed by a man who was approx 5'11" and weighed 210 pounds. He said that the defendant was not the robber, as the defendant is much shorter than the robber. Anderson said that he did not know the defendant and explained that he was testifying because he "kn[e]w somebody and they were like, 'Would you be nice enough to help somebody out, helping them out, send an innocent man to jail for nothing?'" When he heard about the defendant's being arrested for the robbery, he did not feel that the correct person had been arrested. On cross-examination, Anderson admitted that, contrary to his testimony on direct examination, he had known the defendant since grade school, although he had not been associated with him since that time.

After the conclusion of the proof, the jury convicted the defendant, as charged, of aggravated robbery.

## ANALYSIS

The defendant challenges the sufficiency of the convicting evidence, arguing that there was insufficient proof of his identity as the man who robbed the victim at gunpoint. When the sufficiency of the convicting evidence is challenged, the relevant question of the

reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We conclude that the evidence, when viewed in the light most favorable to the State, is sufficient to establish the defendant's identity as the man who robbed the victim. The identification of a defendant as the perpetrator of a crime is a question of fact for the trier of fact to determine from the evidence presented at trial. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The identification testimony of the victim is sufficient, alone, to support a conviction. Id. When shown a photographic array of six individuals following the robbery, the victim "immediately" identified the defendant as the man who robbed her. The victim also identified the defendant in court and said she had no doubt that he was the robber. In addition, the victim's testimony was supported by the BP

station's surveillance video, which showed that the defendant was present when she cashed her check there. The jury, as was its prerogative, accredited the victim's identification of the defendant. The evidence is sufficient to support the defendant's conviction.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE